KAEMPFER CROWELL
Robert McCoy, No. 9121
Brett Pilling, No. 15981
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135
Telephone:  (702) 792-7000
Facsimile:  (702) 796-7181
Email: rmccoy@kcnvlaw.com
Email: bpilling@kcnvlaw.com

Attorneys for Plaintiff JOME, LLC
dba Structure Exhibits

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOME, LLC dba STRUCTURE EXHIBITS, a Nevada limited liability company,<br><br>               Plaintiff,<br><br>vs.<br><br>VICTORIA CONTI, an individual; DEBORAH RODRIGUEZ, an individual; ALIGN COMPANIES LLC dba ALIGN EXHIBITS, a Texas limited liability company; DOES I through XXX; and ROE BUSINESS ENTITIES I through X,<br><br>               Defendants. | Case No.  2:26-cv-00856-JAD-MDC<br><br>**FIRST AMENDED COMPLAINT** |

22281.2

Plaintiff JOME, LLC dba Structure Exhibits ("Structure") complains and alleges against defendants Victoria Conti, Deborah Rodriguez, and Align Companies LLC dba Align Exhibits ("Align") (collectively "Defendants") as follows:

**NATURE OF THE ACTION**

1.      This case arises from Conti's and Rodriguez's breaches of their contractual non-disclosure, non-solicitation, and non-compete obligations to Structure.  Acting in concert with Align, one of Structure's direct competitors, the Defendants used Structure's confidential information to solicit Structure's clients to move their business to Align.

2.      Defendants also conspired to steal and illegally misappropriate Structure's trade secrets and confidential information to steal Structure's clients for Align.

3.      As a result of Defendants' egregious violations of their contractual obligations and Nevada's trade secret statutes, Structure has been irreparably harmed, losing valuable customers whose business generates millions of dollars in annual revenue to Structure.

**PARTIES**

4.      Plaintiff JOME, LLC dba Structure Exhibits is a Nevada limited liability company authorized to and doing business in Clark County, Nevada where its business is headquartered.

5.      Defendant Victoria Conti is an individual residing in Centerville, Massachusetts.

KAEMPFER
CROWELL

22281.2

Page 1 of 34

6.    Defendant Deborah Rodriguez is an individual residing in Brandon, Florida.

7.    Defendant Align Companies LLC dba Align Exhibits is a Texas limited liability company authorized and doing business in Texas, where its business is headquartered.

8.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES I through XXX and ROE BUSINESS ENTITIES I through X, inclusive, are unknown and therefore sued under fictitious names.  Structure believes that each defendant named as a DOE or ROE is responsible in some manner for the events alleged below and has caused damage to Structure and Structure will seek leave to amend this complaint with their true names or capacities when they become known.

**JURISDICTION AND VENUE**

9.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendants because: (a) Defendants Conti and Rodriguez entered into employment and NDA agreements with Structure knowing Structure is a Nevada entity with its headquarters based in Nevada, (b) Defendants regularly conduct business in this District and the State of Nevada and are otherwise purposefully, systematically, and continuously engaged in substantial activities in this District and the State of Nevada, and (c) the vast majority of the conduct complained of here occurred in this District and the State of

KAEMPFER
CROWELL

22281.2

Nevada. Furthermore, Defendants' liability to Structure arises from, and/or is related to, Defendants' activities within this District and the State of Nevada.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 108 because this District embraces the location of the Nevada state court where the state court action is pending and a substantial part of the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

### Structure's Business

12. Structure is an industry leader with over 20 years of experience in the highly competitive business of designing; developing; manufacturing; marketing; distributing; renting and selling of trade show exhibits; graphics; audio/visual rentals; furniture rentals; storage and asset management; high volume, small booth; events; museum exhibits; theatrical and stage sets; and other custom buildouts ("Exhibit Services").

13. Structure is headquartered in Las Vegas, Nevada, with its Nevada warehouse located at 3732 North Las Vegas Boulevard, Suite 100, Las Vegas, Nevada, where Structure produces its large-scale projects and experiential exhibits (the "Main Facility").

14. Structure has a second warehouse located at 1900 E. Tyler Road, Units 400 and 800, St. Charles, Illinois, for high volume, small booth projects (compact, portable exhibition spaces) (the "Illinois Facility").

15. Structure provides its Exhibit Services nationally for the trade show and museum industry, each being unique to their customers' needs, which is

KAEMPFER

CROWELL

22281.2

based on information Structure maintains as confidential and proprietary, and which it guards from disclosure, particularly to its competitors within the industry.

16. Structure's business and the success of its Exhibit Services rely on confidential and/or proprietary information and trade secrets that it has developed over the years.

17. These are unique to Structure and are a critical component of its success in this highly competitive industry.

18. Structure maintains this information as confidential and proprietary and works hard to guard it from disclosure, particularly to its competitors within the industry.

**Structure's Employment Relationship with Conti and Rodriguez**

19. On or about March 7, 2022, Structure hired Rodriguez to serve as a Project Manager, and within a year, Structure determined she possessed the skills necessary to serve as an Account Executive.

20. Rodriguez' dual-role as Project Manager/Account Executive required her to sell and rent exhibits, oversee exhibit set-up, work with customers on their projects, and develop more business for Structure. Eventually, Structure promoted her to Office Manager for the Illinois Facility and Structure's principals began mentoring her with insight about the tradeshow industry and how to run a business, including, but not limited to, negotiating leases, running an office, and supervising and managing employees.

21. On or about September 25, 2023, Structure hired Conti to serve as an Account Executive.

KAEMPFER
CROWELL

22281.2

22.     Conti's role as an Account Executive required her to sell and rent exhibits, build relationships, and help bring clients to Structure.

23.     Structure also hired Rodriguez' brothers, Josiah and Gabriel, to work in the Illinois Warehouses.  Rodriguez was their direct supervisor, and they resigned on January 7, 2026.

24.     To protect this confidential and proprietary information and trade secrets, Structure requires that each of its employees review and sign an Employee Handbook that includes multiple policies concerning the protection of Structure's confidential information.

25.     In addition, the Employee Handbook includes a separate Confidentiality and Non-Solicitation Agreement ("NDA") that each employee of Structure is required to execute.

26.     The NDA contains specific provisions defining Structure's "Confidential Information," "Proprietary Rights," and "Trade Secrets."  The NDA further contains several specific provisions governing each employee's use of this Confidential Information, Proprietary Rights, and Trade Secrets.

27.     When Rodriguez and Conti were hired, they each signed the Employee Handbook and each entered into an NDA wherein they agreed, among other things, not to disclose Structure's Confidential Information, Proprietary Rights and Trade Secrets to others nor to solicit Structure's employees, customers, customer prospects, or vendors.

28.     The NDA defines Structure's "Confidential Information" as "information about the Company and its Customers, Customer Prospects, and/or Vendors that is not generally known outside of the Company, which you will learn

of in connection with your employment with the Company. Confidential Information may include, without limitation: (1) the terms of this Agreement, except as necessary to inform a subsequent employer of the restrictive covenants contained herein and/or your attorney, spouse, or professional tax advisor only on the condition that any subsequent disclosure by any such person shall be considered a disclosure by you and a violation of this Agreement; (2) the Company's business policies, finances, and business plans; (3) the Company's financial projections, including but not limited to, annual sales forecasts and targets and any computation(s) of the market share of Customers and/or Customer Prospects; (4) sales information relating to the Company's product roll-outs; (5) customized software, marketing tools, and/or supplies that you will be provided access to by the Company and/or will create; (6) the identity of the Company's Customers, Customer Prospects, and/or Vendors (including names, addresses, and telephone numbers of Customers, Customer Prospects, and/or Vendors); (7) any list(s) of the Company's Customers, Customer Prospects, and/or Vendors; (8) the account terms and pricing upon which the Company obtains products and services from its Vendors; (9) the account terms and pricing of sales contracts between the Company and its Customers; (10) the proposed account terms and pricing of sales contracts between the Company and its Customer Prospects; (11) the names and addresses of the Company's employees and other business contacts of the Company; and (12) the techniques, methods, and strategies by which the Company develops, manufactures, markets, distributes, and/or sells any of the products described in Section 2.a.(1)"

29. Trade Secrets are defined in the NDA as "Confidential Information which meets the additional requirements of **NRS 600A.010–NRS 600A.100 Chapter 600A TRADE SECRETS (UNIFORM ACT).**"

30. The NDA also defined "Proprietary Rights" to mean "any and all inventions, discoveries, developments, methods, processes, compositions, works, supplier and customer lists (including information relating to the generation and updating thereof), concepts, and ideas (whether or not patentable or copyrightable) conceived, made, developed, created, or reduced to practice by you (whether at the request or suggestion of the Company or otherwise, whether alone or in conjunction with others, and whether during regular hours of work or otherwise) during your employment, which may be directly or indirectly useful in, or related to, the Business of the Company or any business or products contemplated by the Company while you are an employee, officer, or director of the Company."

31. Under the NDA, Conti and Rodriguez agreed that the restrictive covenants of the NDA were "reasonable and necessary to protect [Structure's] legitimate business interests and its Customer, Customer Prospect, and/or Vendor relationships, Trade Secrets, and Confidential Information."

32. Conti and Rodriguez further agreed in the NDA that during their employment and for a period of five years following the termination of such employment for any reason, they would not "directly or indirectly divulge or make use of any Confidential Information" outside of their employment with Structure and that they would not "directly or indirectly misappropriate, divulge, or make use of Trade Secrets for an indefinite period, so long as the information remains a Trade Secret as defined by NRS Chapter 600A...."

33. The NDA also contains non-solicitation provisions which prohibits Conti and Rodriguez from, either during their employment or for 18 months after termination, "directly or indirectly, solicit[ing] or attempt[ing] to solicit any business from any of [Structure's] Customers, Customer Prospects, or Vendors with whom [Conti or Rodriguez] had Material Contact during the last two (2) years" of their employment with Structure "whether or not such business is initiated by the Customer".

34. "Material Contact" is defined in the NDA as "personal contact or the supervision of the efforts of those who have direct personal contact with Customers, Customer Prospects, or Vendors in an effort to initiate or further a business relationship between the Company and such Customers, Customer Prospects, or Vendors."

35. In their respective roles with Structure, Conti and Rodriguez had access to Structure's Confidential Information and Proprietary Rights as defined above, including, but not limited to, customer lists and contact information and Exhibit Services for each customer. In fact, both Conti and Rodriguez were the designated points of contact on Structure's behalf for several key customers which they have since used to their advantage and in direct violation of the NDA.

36. During their employment with Structure, Conti and Rodriguez would travel to Las Vegas, Nevada from time-to-time for client-facing obligations, including, but not limited to, walkthroughs and client meetings. They also had weekly video meetings per Structure policy to discuss status of project designs, builds, and exhibits.

KAEMPFER
CROWELL

22281.2

37. Conti and Rodriguez agreed to hold and maintain such information in the strictest confidence and to not use proprietary information for their own benefit or for the benefit of third parties, nor to publish or otherwise disclose it to others.

38. Under the NDA, Conti and Rodriguez also acknowledged that "engaging in any activity that may breach this Agreement will cause [Structure] great, immediate, and irreparable harm."

**Defendant Align**

39. Align was formed by CEO, Troy Trice ("Trice"), on January 24, 2025 and conducts business as "Align Exhibits," "Xtreme Xhibits by Skyline, Inc.," "Xtreme Xhibits by Skyline," "Xtreme Xhibits," "Xtreme," and, most recently, "Suncoast Displays."

40. Like Structure, Trice has been in the exhibit and museum services industry for decades, but sold his prior business in 2020.

41. Both Conti and Rodriguez were employees of Trice when he sold his last business in 2020.

**Defendants Begin Meeting Together to Discuss Align Hiring**
**Conti and Rodriguez and to Develop a Plan for Conti and Rodriguez to Use**
**Structure's Confidential Information to Steal Structure's Clients**

42. On June 11, 2025, Rodriguez received and accepted a meeting invite from Trice. At this meeting, on information and belief, Trice, Align, and Rodriguez discussed employment opportunities for Rodriguez at Align and how they could use Structure's Confidential Information and Exhibit Services to poach Structure's clients to Align.

KAEMPFER
CROWELL

22281.2

43. In August of 2025, Rodriguez received and accepted various invitations to Align training sessions.

44. On September 18, 2025, Rodriguez accepted another meeting invitation from Align. On information and belief, Trice, Align, and Rodriguez discussed further employment opportunities and how Conti and Rodriguez could use their knowledge of Structure's clients, Structure's Confidential Information, and Structure's Exhibit Services to poach Structure's clients to Align.

**Conti's and Rodriguez' Unauthorized Use of Structure Company Materials**

45. On November 7, 2025, Conti made hotel reservations, using Structure's company credit card, to attend the World of Concrete and Shot Show in January of 2026. On information and belief, Conti knew at the time of making this reservation that she would be leaving Structure and attending the event as an employee of Align.

46. Conti, despite resignation, checked into the Marriott Chateau during the World of Concrete where, during her stay, she was required to add her own card to the reservation because she attempted to charge additional fees to the room on Structure's dime.

47. Rodriguez is also believed to have used the room Conti booked on Structure's company card during the World of Concrete show. And during their time at the World of Concrete show, Rodriguez was seen speaking with Structure's clients, including Agency EA.

48. On November 21, 2025, Neutrik representative, Gretchen Makela, sent Structure's Exhibit Services and Confidential Information to

Rodriguez and Align.  Rodriguez and Neutrik further emailed each other discussing Exhibit Services with Align copied on the emails.

49.     Rodriguez and Neutrik subsequently emailed the proposal and renderings to Align.

50.     On November 25, 2025, Conti, using Structure's company credit card, booked a hotel room for March 28–April 2, 2026, for the Exhibitor Show in Tampa, Florida.  This was not approved by Structure.  On information and belief, Conti knew when making this reservation that she would be leaving Structure and attending the event as an employee of Align.

51.     And, on or about December 30, 2025, Conti submitted her resignation from Structure and then subsequently booked a hotel room on Structure's company credit card for her child.  This was not authorized.

52.     Then, despite their resignations, Conti and Rodriguez proceeded to use airline tickets that were booked using Structure's American Express with flights beginning January 18, 2026, and returning flights on or about January 23, 2026.  On information and belief, Conti and Rodriguez knew at the time of making their flight reservations that they would be leaving Structure and using the airline tickets to attend events as employees of Align.

53.     Rodriguez had also booked a flight for her brother, Josiah Rodriguez (who also resigned) to travel to Las Vegas to supervise installation of a Structure client.  After Josiah Rodriguez resigned, he cancelled the flight and pocketed the airline credit.

KAEMPFER
CROWELL

22281.2

**Conti and Rodriguez Breached Their NDAs and
Acted in Concert with Align to Misappropriate
Structure's Confidential and Proprietary Information**

54.     In December 2025, Structure began preparing stock agreements for Conti and Rodriguez to receive interest, separate from their salaries and commissions, in Structure once vested.

55.     Then, abruptly on or about December 16, 2025, Rodriguez provided Structure with her resignation notice and offered to stay on for an additional 30 days to assist with her transition.

56.     And 14 days later on December 30, 2025, Conti gave Structure her own resignation notice.

57.     Conti had just returned from vacation on December 29, 2025, when she learned of Rodriguez' resignation.  Like Rodriguez, Conti offered to stay with Structure for 30 days.   But Structure declined and Conti's resignation became effective immediately.

58.     Although Structure initially agreed to an extended 30-day transition period following Rodriguez' resignation to facilitate client transfers, on January 4, 2026, Structure discovered emails between Conti and Rodriguez, various customers, and Align, transmitting Confidential Information including invoices and proposals in violation of the NDA.

59.     Between January 8 and January 12, 2026, the principals of Structure arrived at their Illinois Facility, where Rodriguez and her brothers worked, to assess the situation in light of Conti's and Rodriguez' resignations.  While in Chicago, Structure learned their customers' assets had been misplaced.

KAEMPFER

CROWELL

22281.2

60. Rodriguez was provided with a Notice of Termination on January 12, 2026.

61. Structure later discovered additional emails between Defendants (including Align) and various customers transmitting Confidential Information, Proprietary Rights, and/or Trade Secrets, including invoices and proposals in violation of the NDA.

62. For example, just two hours prior to Rodriguez' abrupt resignation, she received an email from Structure's client, Neutrik Group, responding to invoices and proposals sent to it on behalf of Align.

63. Structure also recovered hundreds of emails Rodriguez had deleted prior to her resignation in which she engaged in various conversations with customers and Structure's competitors concerning her impending resignation and transition to Align.

64. Specifically, on December 30, 2025, Conti invited representatives from Structure's client, Milliken, with the vague purpose of "discuss[ing] some changes for 2026."

65. On December 30, 2025, Structure customer Neutrik emailed Structure's other customer, Major Custom Cable Inc., requesting information about Align, the new company Defendant Rodriguez had joined.

66. On or about January 5, 2026, Structure discovered that two customers previously assigned to Rodriguez and/or Conti—Misumi and NTI Surgical—had withdrawn their assets from Structure's warehouses in December 2025 without notifying Structure or completing any paperwork.

67. It was further discovered that Rodriguez had downloaded Confidential Information, including customer- and vendor-related records related to the Exhibit Services prior to her resignation.

68. Concerned about these discoveries, on January 13, 2026, Structure's counsel sent Conti a cease-and-desist letter concerning her retention of Confidential Information related to the Exhibit Services.  Conti has not responded and still has Structure property in her possession.

**Align Recently Announced They Hired Both Conti and Rodriguez**

69. On or about January 13, 2026, Align updated LinkedIn to announce Conti had joined their team.

70. Then, on January 15, 2026, Align announced Rodriguez had also joined their team.

**Defendants Have Sabotaged Structure's Customer Relationships and Used Structure's Confidential and Proprietary Information to Influence Customers to Transfer Their Business to Align**

71. In December 2025, Structure received exhibit assets for Aimpoint/GAIM's programming from another exhibit company.  Aimpoint/GAIM's assets were distributed between Structure's Main Facility and Illinois Facility.

72. During internal discussions, Defendant Rodriguez told Structure's principals and team members that there were no setup instructions for Aimpoint/GAIM's booth components.

73. Without setup instructions, Structure informed Aimpoint/GAIM that new setup documentation would need to be produced, which resulted in Aimpoint/GAIM's frustration and nearly lost Structure the account with the client.

74. On January 7, 2026, while auditing the Illinois Facility following Defendant Rodriguez' termination, Structure found the original setup instructions underneath a bucket in the warehouse which Defendant Rodriguez managed. The bucket hiding the instructions was on Defendant Rodriquez' brother's work cart.

75. Without setup instructions, Structure's team was delayed nearly three weeks because it had to build Aimpoint/GAIM's 40x60 booth piece by piece and measure each individual component to create new CADs.

76. The interruption in processing Aimpoint/GAIM's booth setup created a snowball effect that impeded other Structure projects.

77. On information and belief, Rodriguez, acting in concert with Align, intentionally sabotaged Structure's relationship with Aimpoint/GAIM to disrupt and distract Structure from her pre- and post-resignation plans with Align.

78. When Defendants resigned, Structure was also in the middle of preparing exhibit programming for Milliken. The project was stopped at the Illinois Facility and left incomplete with open crates, boxes and components scattered throughout the Illinois Facility, and no organized staging for the project.

79. To complete the pre-set and meet Milliken's show deadline, Structure had to hire an I&D company, rent replacement exhibit components that were missing, and send a lead supervisor to Florida to ensure proper project completion.

80. As a result of Defendants' misconduct, Structure incurred additional costs of approximately $7,500 for the Milliken show.

81.     On or about January 7, 2026, while inspecting the Illinois Facility following Defendants' resignations, Structure's principals Melissa and John Boyko began pulling High-Volume Small Booth ("HVSB") orders for fulfillment.

82.     One of the HVSB orders included Computershare's shipment of a 43" monitor for their exhibit program.   While reviewing Computershare's inventory in the Illinois Facility, Structure could not locate the monitor and contacted Computershare to ask whether they would prefer a 49" monitor stored in one of their rolling cases.

83.     Then, on January 9, 2026, while reviewing inventory in a separate warehouse, which does not hold HVSB, Structure found the missing monitor underneath other materials and debris.

84.     On information and belief, Rodriguez, acting in concert with Align, intentionally left the Illinois Facility in disarray to disrupt Structure's project completion and sabotage its relationship with customers, including but not necessarily limited to Milliken and Computershare, whose assets are staged in the Illinois Facility.

85.     On or about November 20, 2026, Zest AI was entered as a customer in Structure's system and provided quotes for asset management and storage.

86.     Rental services for Zest AI through Structure are estimated at between $75,000 and $100,000.

87.     During the Governmental Affairs Conference ("GAC") (March 1–5, 2026) in Washington D.C., Zest AI's head of Events and Customer Lifecycle,

Mariah Pollock Wall, commented on Defendant Rodriguez' LinkedIn post about GAC thanking her for her help making the event a success.

88.   Since terminating and blocking Defendants' access to Structure's systems, Structure has been monitoring the email addresses previously assigned to each Defendant while they were employed by Structure.

89.   Both email accounts have received recent correspondence from Structure's customers indicating that Defendants had provided them with proposals and contract terms to transfer business to Align in violation of the NDAs.

90.   For example, on January 5, 2026, after resigning, Conti received correspondence from a Structure customer, Trelleborg Engineered Coated Fabrics, responding to a voicemail from Conti to meet at a conference.

91.   On January 19, 2026, Structure customer Axiom Medical emailed Structure to request to remove its assets from Structure's warehouse no later than February 2, 2026.  On information and belief, Axiom is now a client of Align.

92.   On or about January 21, 2026, a vendor emailed Rodriguez's Structure email account about a booth for Structure customer Neutrik Group with photos of an exhibit setup that utilized a booth design that Structure had created.

93.   But Align manufactured the booth for that customer using Structure's proprietary design.

94.   Prior to that, in November and December 2025, deleted emails Structure recently discovered on this same job showed that Defendant Rodriguez was transferring Structure's data and designs back and forth with Neutrik Group and Align, suggesting a conspiracy or agreement to steal Structure's customers began many months before Defendant Rodriguez resigned.

95. On January 22, 2026, Casey Hiner of Structure's customer Computershare emailed Structure that they would be terminating their partnership with Structure and relocating all of their assets to Align's warehouses effective February 6, 2026.

96. On January 30, 2026, Defendants exchanged multiple emails with Structure's customer, Computershare, concerning future projects with Align. And on February 17, Align emailed Structure to request Structure's data and other Confidential Information related to Computershare.

97. On January 22, 2026, Computershare emailed Structure its formal notice of intent to terminate their business relationship and to transition their products to Align effective February 6, 2026.

98. On January 30, 2026, Structure received an email through Conti's former Structure email where Conti and Rodriguez are actively corresponding with Computershare using Structure's Confidential Information and Proprietary Rights.

99. On February 20, 2026, Gina Martinez of Structure's customer, Springer Publishing, emailed Structure employees, Jack Willet and Erica Rotberg, to withdraw their business from Structure and transition to Align.

100. On February 12, 2026, Jeanine Solomon of Structure's customer, GENTEX Corporation, emailed Defendant Rodriguez concerning a proposal and agreement for services through Align.

101. In 2025, GENTEX' business alone generated $645,000 in revenue for Structure.

102. On information and belief, Rodriguez, acting in concert with Align, intentionally sabotaged Structure's relationship with GENTEX.

103. For example, in September 2025, several GENTEX exhibit components were reported missing. Rodriguez indicated the parts may have been discarded by a Main Facility supervisor. Structure covered the cost to rebuild replacement components to ensure that GENTEX' exhibit was shipped on schedule.

104. After Defendants' resignation, Structure's principals, Melissa and John Boyko, visited the Illinois Facility, which Rodriguez supervised and managed prior to her resignation, where they found the original GENTEX components that Rodriguez claimed were discarded.

105. On March 6, 2026, GENTEX, whose business generates annual revenue of over $640,000 per year for Structure, submitted a notice terminating its business with Structure.

106. On information and belief, Defendants used Structure's Confidential Information and/or Proprietary Rights to influence GENTEX to move their business to Align.

**Defendants Have Stolen and Continue to Steal Structure's Clients**

107. Between December 1, 2025, and present, Conti and Rodriguez have influenced at least seven of Structure's customers to terminate their agreements with Structure to follow Conti and Rodriguez, in violation of the NDA, to Structure's direct competitor, Align.

108. Customers and other members of the industry have also reported to Structure that Conti and Rodriguez are falsely claiming they were fired and making other misrepresentations concerning Structure's business practices.

KAEMPFER

CROWELL

22281.2

109. On or about January 22, 2026, during the World of Concrete 2026 Convention in Las Vegas, Nevada, Rodriguez was seen speaking with Structure's customer, a representative of Agency EA.

110. Those customers stolen by Conti and Rodriguez represent over $1,000,000 in Structure's annual revenue.

111. On information and belief, Conti and Rodriguez are actively bidding against Structure, using Structure's Confidential Information and Proprietary Rights, to entice other Structure customers to join Align in direct violation of the NDA. Those additional Structure customers represent an additional nearly $2,000,000 in annual revenue.

112. Conti and Rodriguez have breached, and continue to breach, their NDA obligations and are causing substantial and irreparable harm to Structure's business.

## FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets against Conti and Rodriguez)

113. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

114. Structure's business involves the use of Confidential Information and Proprietary Rights, as defined above.

115. This information and materials constitute "trade secrets" as defined by NRS 600A.030(5) because it derives independent economic value from not being generally known. Structure has developed and maintained these trade secrets, which are critical to its business operations and competitive advantage.

KAEMPFER

CROWELL

22281.2

116. Structure has taken reasonable measures to protect the confidentiality of its trade secrets, including requiring confidentiality of all employees, customers, and anyone who may access the Exhibit Services.

117. Conti and Rodriguez had access to Structure's trade secrets during the course of their employment relationship with Structure.

118. Conti and Rodriguez have knowingly misappropriated Structure's trade secrets in violation of NRS Chapter 600A by, among other things, improperly acquiring, using, disclosing, and profiting from the Exhibit Services and Structure's customer information, by improper means and without Structure's consent, and in willful breach of a duty to maintain secrecy, including through Conti's and Rodriguez' development, use, sale, installation, and dissemination of customer data to Structure's competitor and Conti's and Rodriguez' new employer, Align, as described in more detail above.

119. As a direct and proximate result of Conti's and Rodriguez' actions, Structure has suffered and will continue to suffer irreparable harm and thus is entitled to injunctive relief pursuant to NRS 600A.040 and common law.

120. As a direct and proximate result of Conti's and Rodriguez' actions, Structure has suffered and will continue to suffer loss of competitive advantage, and economic damages in an amount in excess of $75,000, and thus is entitled to an award of damages pursuant to NRS 600A.050 (including for unjust enrichment and imposition of a royalty) and common law.

121. Due to Conti's and Rodriguez' willful, wanton, and reckless misappropriation of Structure's trade secrets, Structure is also entitled to an award of exemplary damages pursuant to NRS 600A.050(2).

KAEMPFER

CROWELL

22281.2

Page 21 of 34

122.   Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law, including pursuant to NRS 600A.060 based on Conti's and Rodriguez' willful and malicious misappropriation of Structure's trade secrets.

## SECOND CAUSE OF ACTION

### (Breach of Contract against Conti and Rodriguez)

123.   Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

124.   Structure, Conti, and Rodriguez are parties to the NDA, which is a valid and enforceable contract.

125.   Structure performed all of its obligations under the NDA or has been excused from doing so.

126.   Conti and Rodriguez materially breached their obligations under the NDA, including the non-disclosure and non-solicitation provisions therein, by, among other things, taking, using, disclosing, and profiting from Structure's customer lists and operations data, which consists of Structure's valuable, proprietary, confidential and non-public data including its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA. Defendants have also used this information to solicit Structure's customers in direct violation of the provisions of the NDA.

KAEMPFER
CROWELL

22281.2

127. As a direct and proximate result of Conti's and Rodriguez' breaches, Structure has been damaged in an amount in excess of $75,000.

128. Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

## THIRD CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing against Conti and Rodriguez)**

129. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

130. Structure, Conti, and Rodriguez are parties to the NDA which is a valid and enforceable contract.

131. An implied covenant of good faith and fair dealing is inherent in every contract, including the NDA, which forbids arbitrary, unfair actions that interfere with the other party's justified expectations under the contract.

132. Structure performed all of its obligations under the NDA or has been excused from doing so.

133. Conti and Rodriguez acted unfaithfully to the purpose and intent of the NDA as described above, including the non-disclosure and non-solicitation provisions therein, by, among other things, taking, using, disclosing, and profiting from Structure's customer lists and operations data, which consists of Structure's valuable, proprietary, confidential and non-public data including its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all

other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA. Defendants have also used this information to solicit Structure's customers in direct violation of the provisions of the NDA.

134. As a direct and proximate result of Conti's and Rodriguez' breaches of the implied covenant of good faith and fair dealing, Structure has been damaged in an amount in excess of $75,000.

135. Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment against All Defendants)

136. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

137. Structure brings this claim in the alternative to its misappropriation of trade secrets claim set forth above.

138. Structure conferred a benefit on Conti and Rodriguez in the form of the Exhibit Services and Confidential Information which they improperly used to convert Structure's customers to Align customers.

139. Furthermore, Conti and Rodriguez continue to use, after their termination, Structure credit cards to pay for travel and lodging expenses.

140. Conti and Rodriguez accepted, appreciated, and retained those benefits, which in equity and good conscience belong to Structure.

KAEMPFER
CROWELL

22281.2

141. Structure, through Conti's and Rodriguez' employment with Structure, conferred a benefit on Align in the form of the Exhibit Services and Confidential Information as described above.

142. Align accepted, appreciated, and retained those benefits, which in equity and good conscience belong to Structure.

143. Under these circumstances, it would be inequitable for Defendants to retain these benefits without payment to Structure.

144. Retention of Structure's money and property without payment would be against the fundamental principles of justice or equity and good conscience.

145. As a direct and proximate result of Defendants' actions, Structure has been damaged in an amount in excess of $75,000.

146. Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

**FIFTH CAUSE OF ACTION**

**(Conversion against All Defendants)**

147. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

148. Structure brings this claim in the alternative to its misappropriation of trade secrets claim set forth above.

149. Defendants have wrongfully exerted a distinct act of dominion over Structure's Exhibit Services, customer information, Confidential Information, and Proprietary Rights as described above.

KAEMPFER

CROWELL

22281.2

150.  Defendants' acts in this regard have been in denial of, or inconsistent with Structure's right or title to, that property.

151.  Defendants' acts in this regard have been in derogation, exclusion, or defiance of Structure's right or title to, that property.

152.  As a direct and proximate result of Defendants' actions, Structure has been damaged in an amount in excess of $75,000.

153.  Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

## SIXTH CAUSE OF ACTION

### (Injunctive Relief against All Defendants)

154.  Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

155.  Structure will be irreparably harmed unless Defendants are temporarily and permanently enjoined from using or disclosing Structure's proprietary and confidential information and materials including Structure's Exhibit Services, which consists of Structure's confidential and non-public data including but not limited to, its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA.

156.  In addition, Structure will be irreparably harmed unless a temporary and permanent prescriptive injunction is issued requiring Defendants to

KAEMPFER

CROWELL

22281.2

Page 26 of 34

turn-over any and all administrative login credentials that allow them access to Structure's systems, Customer, Customer Prospects, and Vendor information.

157. Defendants' ongoing conduct as described above is intended to damage Structure's business, which leaves Structure with no adequate remedy at law.

158. Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

## SEVENTH CAUSE OF ACTION

### (Specific Performance against Conti and Rodriguez)

159. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

160. Structure, Conti, and Rodriguez are parties to the NDA which is a valid and enforceable contract.

161. Structure performed all of its obligations under the NDA or has been excused from doing so.

162. Conti and Rodriguez materially breached their obligations under the NDA, including the non-disclosure and non-solicitation provisions therein, by, among other things, taking, using, disclosing, and profiting from Structure's Exhibit Services, which consists of Structure's valuable, proprietary, confidential and non-public data including its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA as described above.

KAEMPFER
CROWELL

22281.2

Page 27 of 34

163. Conti's and Rodriguez' ongoing conduct is intended to damage Structure's business, which leaves Structure with no adequate remedy at law.

164. Structure is entitled to an order compelling Conti and Rodriguez to comply with their obligations under the NDA, including by refraining from using or disclosing, directly or indirectly, or allowing anyone else, directly or indirectly, to use or disclose, Structure's proprietary and confidential information and materials which consists of Structure's confidential and non-public data including but not limited to, its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA.

165. Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

## EIGHTH CAUSE OF ACTION

### (Civil Conspiracy against All Defendants)

166. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

167. As described in more detail above, Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Structure.

168. As described in more detail above, Defendants worked together to poach clients from Structure, using Structure's Confidential Information, to harm Structure for the benefit of Defendants.

KAEMPFER
CROWELL

22281.2

Page 28 of 34

169.   While employed with Structure, as described above, Conti and Rodriguez planned with Align a process where Conti and Rodriguez would leave Structure for Align and poach Structure's clients for Align.

170.   Additional information concerning the when, where, and how of this conspiracy is within the exclusive control of Defendants and not currently available to Structure.

171.   As a result of Defendants' conspiracy, Structure has sustained damages in excess of $75,000.

**NINTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relations against All Defendants)**

172.   Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

173.   There existed multiple contracts between Structure and NTI Surgical, Misumi, Neutrik Group, TIDI Products, Axiom Medical, ComputerShare, GENTEX, and Springer Publishing.

174.   Defendants knew these clients had contracts with Structure.

175.   Defendants intentionally used Structure's Confidential Information and Exhibit Services to lure these clients to Align as described above.

176.   As a result of Defendants using Structure's Confidential Information and Exhibit Services, Defendants were able to have the clients break their contract with Structure and sign a contract with Align.

177.   As a result of this intentional interference, Structure has sustained damages in excess of $75,000.

## TENTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage against All Defendants)

178. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

179. There were prospective contractual relations between Structure and various potential clients.

180. Defendants, through Conti's and Rodriguez' former employment with Structure, were keenly aware of these potential clients.

181. As described above, Defendants intended to harm Structure by poaching these potential clients by undercutting Structure while using Structure's Confidential Information.

182. Defendants had no privilege or justification for interfering with these prospective clients.

183. As a result of Defendants' interference, Structure has sustained damages in excess of $75,000.

## ELEVENTH CAUSE OF ACTION

### (Aiding and Abetting against Align)

184. Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

185. Align knew Conti's and Rodriguez' use of Structure's Confidential Information to poach clients and undercut Structure with potential clients constituted a breach of duty to Structure.

KAEMPFER
CROWELL

22281.2

186.   Align, for personal gain, encouraged and substantially assisted Conti's and Rodriguez' misappropriation of Structure's Confidential Information as described above.

187.   As a result of Align's aiding and abetting, Structure has sustained damages in excess of $75,000.

### TWELFTH CAUSE OF ACTION

### (Declaratory Relief against Conti and Rodriguez)

188.   Structure repeats and realleges the prior allegations and incorporates them as though fully set forth here.

189.   Nevada has adopted the Uniform Declaratory Judgments Act, which permits parties to submit the question of their respective rights under a contract to the Court for a declaration thereof.

190.   Structure, Conti, and Rodriguez entered in the contracts described above.

191.   A justiciable controversy exists between Structure, Conti, and Rodriguez Defendants.

192.   Structure, Conti, and Rodriguez have asserted competing interest and claims of right with respect to the subject matter of this litigation.

193.   This controversy is ripe for judicial determination.

194.   Structure is entitled to a declaratory judgment from this Court that:

    a.   Structure is the sole owner of Structure's proprietary and confidential information and materials including Structure's Exhibit Services, which consists of Structure's confidential and non-public data including but not limited to, its (a) Customer, Customer Prospects, and Vendor

KAEMPFER

CROWELL

22281.2

information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA;

b.   Conti and Rodriguez have no right, title, or interest in Structure's proprietary and confidential information and materials including Structure's Exhibit Services, which consists of Structure's confidential and non-public data including but not limited to, its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA; and

c.   Conti and Rodriguez are prohibited from using or disclosing Structure's proprietary and confidential information and materials including Structure's Exhibit Services, which consists of Structure's confidential and non-public data including but not limited to, its (a) Customer, Customer Prospects, and Vendor information and contact lists, (b) database and database information, (c) imagery, branding and identifying information, and (d) all other Confidential Information, Proprietary Rights, and Trade Secrets covered by the NDA.

195.   Structure has been required to retain the services of counsel to enforce its rights and is entitled to an award of its attorney fees and costs pursuant to contract and/or Nevada law.

WHEREFORE, Structure prays for the following:

1.   That judgment be entered for Structure on all causes of action;

2.   For general and consequential damages in excess of $75,000.00 under all causes of action;

3.   For punitive damages and/or exemplary damages;

4.   For temporary and permanent injunctive relief as set forth above;

5.   For specific performance as set forth above;

KAEMPFER
CROWELL

22281.2

Page 32 of 34

6.    For declaratory relief as set forth above;

7.    For all attorney fees and costs of suit;

8.    For pre-judgment and post-judgment interest; and

9.    For such other relief as this Court deems just, equitable, and proper.

KAEMPFER CROWELL

Robert McCoy, No. 9121
Brett Pilling, No. 15981
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

Attorneys for Plaintiff JOME, LLC
dba Structure Exhibits

22281.2

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that service of the **FIRST AMENDED COMPLAINT** was made on today's date by submitting electronically for filing and service with the United States District Court for the District of Nevada through the PACER Electronic Filing System to the addressee(s) shown below:

John A. Hunt, No. 1888
Bert Wuester, Jr., No. 5556
CLARK HILL PLLC
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
jhunt@clarkhill.com
bwuester@clarkhill.com

Attorneys for Defendants
Victoria Conti and Deborah Rodriguez

DATED March 26, 2026

_____
Desiree Endres
An employee of Kaempfer Crowell

KAEMPFER
CROWELL

22281.2